1  TRACY WILKISON
   Attorney for the United States, Acting Under
2  Authority Conferred By 28 U.S.C. § 515
   LAWRENCE S. MIDDLETON
3  Assistant United States Attorney
   Chief, Criminal Division
4  KERRY L. QUINN (Cal. Bar No. 302954)
   Assistant United States Attorney
5  Major Frauds Section
        1100 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-5423
        Facsimile: (213) 894-6269
8       E-mail:   Kerry.L.Quinn@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
10

11                  UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13 UNITED STATES OF AMERICA, | No. CR 17-776-GW-2 |
| 14          Plaintiff, | PLEA AGREEMENT FOR DEFENDANT EDDIE HERNANDEZ |
| 15              v. | |
| 16 EDDIE HERNANDEZ, | |
| 17          Defendant. | |

18

19      1.    This constitutes the plea agreement between EDDIE HERNANDEZ

20  ("defendant") and the United States Attorney's Office for the Central

21  District of California (the "USAO") in the above-captioned case.

22  This agreement is limited to the USAO and cannot bind any other

23  federal, state, local, or foreign prosecuting, enforcement,

24  administrative, or regulatory authorities.

25                      DEFENDANT'S OBLIGATIONS

26      2.    Defendant agrees to:

27          a.    At the earliest opportunity requested by the USAO and

28  provided by the Court, appear and plead guilty to count eight of the

1  indictment in United States v. Eddie Hernandez, No. 2:17-CR-776-GW-2,
2  which charges defendant with health care fraud in violation of 18
3  U.S.C. § 1347.

4          b.    Not contest facts agreed to in this agreement.

5          c.    Abide by all agreements regarding sentencing contained
6  in this agreement.

7          d.    Appear for all court appearances, surrender as ordered
8  for service of sentence, obey all conditions of any bond, and obey
9  any other ongoing court order in this matter.

10         e.    Not commit any crime; however, offenses that would be
11 excluded for sentencing purposes under United States Sentencing
12 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
13 within the scope of this agreement.

14         f.    Be truthful at all times with Pretrial Services, the
15 United States Probation Office, and the Court.

16         g.    Pay the applicable special assessment at or before the
17 time of sentencing unless defendant lacks the ability to pay and
18 prior to sentencing submits a completed financial statement on a form
19 to be provided by the USAO.

20         h.    Not seek the discharge of any restitution obligation,
21 in whole or in part, in any present or future bankruptcy proceeding.

22                        THE USAO'S OBLIGATIONS

23 3.    The USAO agrees to:

24         a.    Not contest facts agreed to in this agreement.

25         b.    Abide by all agreements regarding sentencing contained
26 in this agreement.

27         c.    At the time of sentencing, move to dismiss the
28 remaining counts of the indictment as against defendant.  Defendant

                                    2

1   agrees, however, that at the time of sentencing the Court may
2   consider any dismissed charges in determining the applicable
3   Sentencing Guidelines range, the propriety and extent of any
4   departure from that range, and the sentence to be imposed.

5           d.    At the time of sentencing, provided that defendant
6   demonstrates an acceptance of responsibility for the offense up to
7   and including the time of sentencing, recommend a two-level reduction
8   in the applicable Sentencing Guidelines offense level, pursuant to
9   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
10  additional one-level reduction if available under that section.

11          e.    Recommend that defendant be sentenced to a term of
12  imprisonment no higher than the low end of the applicable Sentencing
13  Guidelines range, provided that the offense level used by the Court
14  to determine that range is 21 or higher and provided that the Court
15  does not depart downward in offense level or criminal history
16  category.  For purposes of this agreement, the low end of the
17  Sentencing Guidelines range is that defined by the Sentencing Table
18  in U.S.S.G. Chapter 5, Part A.

19                          NATURE OF THE OFFENSE

20      4.  Defendant understands that for defendant to be guilty of
21  the crime charged in count eight, that is, healthcare fraud, in
22  violation of Title 18, United States Code, Section 1347, the
23  following must be true:

24          First, the defendant knowingly and willfully executed or
25      attempted to execute a scheme or plan to defraud a health care
26      benefit program or to obtain money or property owned by or under
27      the custody or control of a health care benefit program by means

28

                                    3

1    of false or fraudulent pretenses, representations, or promises,

2    or the omission of material facts;

3        Second, the statements made or facts omitted as part of the

4    scheme were material, that is, they had a natural tendency to

5    influence, or were capable of influencing, a health care benefit

6    program to part with money or property;

7        Third, the defendant acted with the intent to defraud, that

8    is, the intent to deceive or cheat;

9        Fourth, the targeted insurance plan was a health care

10   benefit program, that is, a public or private plan or contract,

11   affecting commerce, under which any medical benefit, item, or

12   service is provided to any individual; and

13       Fifth, the scheme or plan was executed in connection with

14   the delivery of or payment for health care benefits, items, or

15   services.

16   For purposes of proving health care fraud: (a) an act is done

17   knowingly if the defendant is aware of the act and does not act

18   through ignorance, mistake, or accident; and (b) an act is done

19   willfully if the defendant acts with a bad purpose, that is, with

20   general knowledge that the defendant's conduct is unlawful.   The

21   government is not required to prove that the defendant knew of the

22   specific statute that rendered the defendant's conduct unlawful.

23                   PENALTIES AND RESTITUTION

24       5.   Defendant understands that the statutory maximum sentence

25   that the Court can impose for a violation of Title 18, United States

26   Code, Section 1347, is: 10 years' imprisonment; a 3-year period of

27   supervised release; a fine of $250,000 or twice the gross gain or

28

                                    4

1  gross loss resulting from the offense, whichever is greatest; and a
2  mandatory special assessment of $100.

3      6.   Defendant understands that defendant will be required to
4  pay full restitution to the victim(s) of the offense to which
5  defendant is pleading guilty. Defendant agrees that, in return for
6  the USAO's compliance with its obligations under this agreement, the
7  Court may order restitution to persons other than the victim(s) of
8  the offense to which defendant is pleading guilty and in amounts
9  greater than those alleged in the count to which defendant is
10 pleading guilty. In particular, defendant agrees that the Court may
11 order restitution to any victim of any of the following for any
12 losses suffered by that victim as a result: (a) any relevant conduct,
13 as defined in U.S.S.G. § 1B1.3, in connection with the offense to
14 which defendant is pleading guilty; and (b) any counts dismissed
15 pursuant to this agreement as well as all relevant conduct, as
16 defined in U.S.S.G. § 1B1.3, in connection with those counts.   The
17 parties currently believe that the applicable amount of restitution
18 is approximately $860,514.86, but recognize and agree that this
19 amount could change based on facts that come to the attention of the
20 parties prior to sentencing.

21     7.   Defendant understands that supervised release is a period
22 of time following imprisonment during which defendant will be subject
23 to various restrictions and requirements. Defendant understands that
24 if defendant violates one or more of the conditions of any supervised
25 release imposed, defendant may be returned to prison for all or part
26 of the term of supervised release authorized by statute for the
27 offense that resulted in the term of supervised release, which could

28

5

1  result in defendant serving a total term of imprisonment greater than
2  the statutory maximum stated above.

3       8.   Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury.
7  Defendant understands that once the Court accepts defendant's guilty
8  plea, it will be a federal felony for defendant to possess a firearm
9  or ammunition.  Defendant understands that the conviction in this
10 case may also subject defendant to various other collateral
11 consequences, including but not limited to revocation of probation,
12 parole, or supervised release in another case, mandatory exclusion
13 from providing services for any federal health care benefit program
14 for at least five years, and suspension or revocation of a
15 professional license.  Defendant understands that unanticipated
16 collateral consequences will not serve as grounds to withdraw
17 defendant's guilty plea.

18      9.   Defendant understands that, if defendant is not a United
19 States citizen, the felony conviction in this case may subject
20 defendant to: removal, also known as deportation, which may, under
21 some circumstances, be mandatory; denial of citizenship; and denial
22 of admission to the United States in the future.  The Court cannot,
23 and defendant's attorney also may not be able to, advise defendant
24 fully regarding the immigration consequences of the felony conviction
25 in this case.  Defendant understands that unexpected immigration
26 consequences will not serve as grounds to withdraw defendant's guilty
27 plea.

28

1

## FACTUAL BASIS

2     10.  Defendant admits that defendant is, in fact, guilty of the
3 offense to which defendant is agreeing to plead guilty.  Defendant
4 and the USAO agree to the statement of facts set forth in Exhibit A
5 to this agreement and incorporated herein by reference is sufficient
6 to support a plea of guilty to the charge described in this agreement
7 and to establish the Sentencing Guidelines factors set forth in
8 paragraph 12 below but is not meant to be a complete recitation of
9 all facts relevant to the underlying criminal conduct or all facts
10 known to either party that relate to that conduct.

11

## SENTENCING FACTORS

12     11.  Defendant understands that in determining defendant's
13 sentence the Court is required to calculate the applicable Sentencing
14 Guidelines range and to consider that range, possible departures
15 under the Sentencing Guidelines, and the other sentencing factors set
16 forth in 18 U.S.C. § 3553(a).  Defendant understands that the
17 Sentencing Guidelines are advisory only, that defendant cannot have
18 any expectation of receiving a sentence within the calculated
19 Sentencing Guidelines range, and that after considering the
20 Sentencing Guidelines and the other § 3553(a) factors, the Court will
21 be free to exercise its discretion to impose any sentence it finds
22 appropriate up to the maximum set by statute for the crime of
23 conviction.

24     12.  Defendant and the USAO agree to the following applicable
25 Sentencing Guidelines factors:

26   Base Offense Level:        6    [U.S.S.G. § 2B1.1(a)(2)]

27   Specific Offense
  Characteristics

28

7

| | | |
|---|---|---|
| Intended loss between $3.5 million and $9.5 million | +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| Acceptance of responsibility | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 21 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 26 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

13.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing

8

1  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
2  (a)(2), (a)(3), (a)(6), and (a)(7).

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4      15.  Defendant understands that by pleading guilty, defendant
5  gives up the following rights:

6           a.    The right to persist in a plea of not guilty.

7           b.    The right to a speedy and public trial by jury.

8           c.    The right to be represented by counsel -- and if
9  necessary have the court appoint counsel -- at trial.  Defendant
10 understands, however, that, defendant retains the right to be
11 represented by counsel -- and if necessary have the court appoint
12 counsel -- at every other stage of the proceeding.

13          d.    The right to be presumed innocent and to have the
14 burden of proof placed on the government to prove defendant guilty
15 beyond a reasonable doubt.

16          e.    The right to confront and cross-examine witnesses
17 against defendant.

18          f.    The right to testify and to present evidence in
19 opposition to the charges, including the right to compel the
20 attendance of witnesses to testify.

21          g.    The right not to be compelled to testify, and, if
22 defendant chose not to testify or present evidence, to have that
23 choice not be used against defendant.

24          h.    Any and all rights to pursue any affirmative defenses,
25 Fourth Amendment or Fifth Amendment claims, and other pretrial
26 motions that have been filed or could be filed.

27
28

                                  9

1

## WAIVER OF APPEAL OF CONVICTION

2      16.   Defendant understands that, with the exception of an appeal
3  based on a claim that defendant's guilty plea was involuntary, by
4  pleading guilty defendant is waiving and giving up any right to
5  appeal defendant's conviction on the offense to which defendant is
6  pleading guilty.  Defendant understands that this waiver includes,
7  but is not limited to, arguments that the statute to which defendant
8  is pleading guilty is unconstitutional, and any and all claims that
9  the statement of facts provided herein is insufficient to support
10 defendant's plea of guilty.

11

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12      17.   Defendant agrees that, provided the Court imposes a term of
13 imprisonment within or below the range corresponding to an offense
14 level of 21 and the criminal history category calculated by the
15 Court, defendant gives up the right to appeal all of the following:
16 (a) the procedures and calculations used to determine and impose any
17 portion of the sentence; (b) the term of imprisonment imposed by the
18 Court; (c) the fine imposed by the Court, provided it is within the
19 statutory maximum; (d) to the extent permitted by law, the
20 constitutionality or legality of defendant's sentence, provided it is
21 within the statutory maximum; (e) the amount and terms of any
22 restitution order, provided it requires payment of no more than
23 $860,514.86; (f) the term of probation or supervised release imposed
24 by the Court, provided it is within the statutory maximum; and
25 (g) any of the following conditions of probation or supervised
26 release imposed by the Court: the conditions set forth in General
27 Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

28

10

1  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
2  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

3      18.  The USAO agrees that, provided (a) all portions of the
4  sentence are at or below the statutory maximum specified above and
5  (b) the Court imposes a term of imprisonment within or above the
6  range corresponding to an offense level of 21 and the criminal
7  history category calculated by the Court, the USAO gives up its right
8  to appeal any portion of the sentence, with the exception that the
9  USAO reserves the right to appeal the amount of restitution ordered
10  if that amount is less than $860,514.86.

11                    WAIVER OF COLLATERAL ATTACK

12      19.  Defendant also gives up any right to bring a post-
13  conviction collateral attack on the conviction or sentence, including
14  any order of restitution, except a post-conviction collateral attack
15  based on a claim of ineffective assistance of counsel, a claim of
16  newly discovered evidence, or an explicitly retroactive change in the
17  applicable Sentencing Guidelines, sentencing statutes, or statutes of
18  conviction.  Defendant understands that this waiver includes, but is
19  not limited to, arguments that the statute to which defendant is
20  pleading guilty is unconstitutional, and any and all claims that the
21  statement of facts provided herein is insufficient to support
22  defendant's plea of guilty.

23                    RESULT OF WITHDRAWAL OF GUILTY PLEA

24      20.  Defendant agrees that if, after entering a guilty plea
25  pursuant to this agreement, defendant seeks to withdraw and succeeds
26  in withdrawing defendant's guilty plea on any basis other than a
27  claim and finding that entry into this plea agreement was
28  involuntary, then (a) the USAO will be relieved of all of its

                                11

1  obligations under this agreement; and (b) should the USAO choose to
2  pursue any charge that was dismissed as a result of this agreement,
3  then (i) any applicable statute of limitations will be tolled between
4  the date of defendant's signing of this agreement and the filing
5  commencing any such action; and (ii) defendant waives and gives up
6  all defenses based on the statute of limitations, any claim of pre-
7  indictment delay, or any speedy trial claim with respect to any such
8  action, except to the extent that such defenses existed as of the
9  date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

11     21.   Defendant agrees that if the count of conviction is
12  vacated, reversed, or set aside, both the USAO and defendant will be
13  released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

15     22.   This agreement is effective upon signature and execution of
16  all required certifications by defendant, defendant's counsel, and an
17  Assistant United States Attorney.

## BREACH OF AGREEMENT

19     23.   Defendant agrees that if defendant, at any time after the
20  effective date of this agreement, knowingly violates or fails to
21  perform any of defendant's obligations under this agreement ("a
22  breach"), the USAO may declare this agreement breached.  All of
23  defendant's obligations are material, a single breach of this
24  agreement is sufficient for the USAO to declare a breach, and
25  defendant shall not be deemed to have cured a breach without the
26  express agreement of the USAO in writing.  If the USAO declares this
27  agreement breached, and the Court finds such a breach to have
28  occurred, then: (a) if defendant has previously entered a guilty plea

1  pursuant to this agreement, defendant will not be able to withdraw
2  the guilty plea, and (b) the USAO will be relieved of all its
3  obligations under this agreement.

4      24.  Following the Court's finding of a knowing breach of this
5  agreement by defendant, should the USAO choose to pursue any charge
6  that was dismissed as a result of this agreement, then:

7          a.  Defendant agrees that any applicable statute of
8  limitations is tolled between the date of defendant's signing of this
9  agreement and the filing commencing any such action.

10          b.  Defendant waives and gives up all defenses based on
11  the statute of limitations, any claim of pre-indictment delay, or any
12  speedy trial claim with respect to any such action, except to the
13  extent that such defenses existed as of the date of defendant's
14  signing this agreement.

15          c.  Defendant agrees that: (i) any statements made by
16  defendant, under oath, at the guilty plea hearing (if such a hearing
17  occurred prior to the breach); (ii) the agreed to factual basis
18  statement in this agreement; and (iii) any evidence derived from such
19  statements, shall be admissible against defendant in any such action
20  against defendant, and defendant waives and gives up any claim under
21  the United States Constitution, any statute, Rule 410 of the Federal
22  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
23  Procedure, or any other federal rule, that the statements or any
24  evidence derived from the statements should be suppressed or are
25  inadmissible.

26              COURT AND PROBATION OFFICE NOT PARTIES

27      25.  Defendant understands that the Court and the United States
28  Probation Office are not parties to this agreement and need not

13

1 accept any of the USAO's sentencing recommendations or the parties'
2 agreements to facts or sentencing factors.

3     26. Defendant understands that both defendant and the USAO are
4 free to: (a) supplement the facts by supplying relevant information
5 to the United States Probation Office and the Court, (b) correct any
6 and all factual misstatements relating to the Court's Sentencing
7 Guidelines calculations and determination of sentence, and (c) argue
8 on appeal and collateral review that the Court's Sentencing
9 Guidelines calculations and the sentence it chooses to impose are not
10 error, although each party agrees to maintain its view that the
11 calculations in paragraph 12 are consistent with the facts of this
12 case. While this paragraph permits both the USAO and defendant to
13 submit full and complete factual information to the United States
14 Probation Office and the Court, even if that factual information may
15 be viewed as inconsistent with the facts agreed to in this agreement,
16 this paragraph does not affect defendant's and the USAO's obligations
17 not to contest the facts agreed to in this agreement.

18     27. Defendant understands that even if the Court ignores any
19 sentencing recommendation, finds facts or reaches conclusions
20 different from those agreed to, and/or imposes any sentence up to the
21 maximum established by statute, defendant cannot, for that reason,
22 withdraw defendant's guilty plea, and defendant will remain bound to
23 fulfill all defendant's obligations under this agreement. Defendant
24 understands that no one -- not the prosecutor, defendant's attorney,
25 or the Court -- can make a binding prediction or promise regarding
26 the sentence defendant will receive, except that it will be within
27 the statutory maximum.

28

14

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY WILKISON
Attorney for the United States,
Acting Under Authority Conferred By
28 U.S.C. § 515

_____          10 / 26 / 18
KERRY L. QUINN                      Date
Assistant United States Attorney

_____          10 / 26 | 18
EDDIE HERNANDEZ                     Date
Defendant

_____          10 | 25 | 18
CHRISTY O'CONNOR                    Date
Deputy Federal Public Defender
Attorney for Defendant
EDDIE HERNANDEZ


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand

15

1  the terms of this agreement, and I voluntarily agree to those terms.
2  I have discussed the evidence with my attorney, and my attorney has
3  advised me of my rights, of possible pretrial motions that might be
4  filed, of possible defenses that might be asserted either prior to or
5  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
6  of relevant Sentencing Guidelines provisions, and of the consequences
7  of entering into this agreement.  No promises, inducements, or
8  representations of any kind have been made to me other than those
9  contained in this agreement.  No one has threatened or forced me in
10  any way to enter into this agreement.  I am satisfied with the
11  representation of my attorney in this matter, and I am pleading
12  guilty because I am guilty of the charges and wish to take advantage
13  of the promises set forth in this agreement, and not for any other
14  reason.

15
16  EDDIE HERNANDEZ                              Date   $10 \cdot 26 \cdot 18$
   Defendant

17

18                 CERTIFICATION OF DEFENDANT'S ATTORNEY

19      I am EDDIE HERNANDEZ's attorney.  I have carefully and
20  thoroughly discussed every part of this agreement with my client.
21  Further, I have fully advised my client of his rights, of possible
22  pretrial motions that might be filed, of possible defenses that might
23  be asserted either prior to or at trial, of the sentencing factors
24  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
25  provisions, and of the consequences of entering into this agreement.
26  To my knowledge: no promises, inducements, or representations of any
27  kind have been made to my client other than those contained in this
28  agreement; no one has threatened or forced my client in any way to

                                   16

enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____                    $\frac{10/25/18}{\text{Date}}$

CHRISTY O'CONNOR
Attorney for Defendant
EDDIE HERNANDEZ

17

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A To Plea Agreement for**

**Defendant Eddie Hernandez ("defendant")**

BACKGROUND

At all relevant times:

A.   Defendant worked for the United Parcel Service ("UPS") as a driver out of a distribution center in Gardena, California. Defendant also owned and operated Eddie C. Hernandez Consulting, Inc. ("Hernandez Consulting"), and maintained bank accounts in the name of Hernandez Consulting.

B.   Co-conspirator No. 1 ("CC-1") owned and operated a sleep study clinic in Los Angeles, California under the name Atlas Diagnostic Services, Inc. ("Atlas").

C.   UPS had established an employee health care benefit plan (the "UPS Plan") to provide health care benefits to its employees and employees' qualifying dependents.  The UPS Plan reimbursed health care providers for health care services only if the services had in fact been provided to UPS employees or their dependents and then only if the services were medically necessary.

D.   The UPS Plan was a "health care benefit program" as defined by 18 U.S.C. § 24, being a private plan, affecting commerce, under which medical benefits, items, and services were provided to individuals.

THE SCHEME TO DEFRAUD

From in or about January 2015, through in or about June 2016, defendant knowingly, willfully, and with intent to defraud, participated in a scheme to defraud the UPS Plan as to material matters in connection with the delivery of and payment for health care benefits, items, and services.

1

Agreed and initialed: CC

1    The fraudulent scheme was carried out, in substance, in the
2  following manner:

3    A.    Defendant recruited UPS employees to participate in sleep
4  study testing at Atlas by offering cash to UPS employees in exchange
5  for participation in the sleep study testing, as well as offering
6  additional cash for bringing dependents and referring other co-
7  workers.

8    B.    Defendant recruited other UPS employees and their
9  dependents (the "patients") for sleep study testing regardless of
10 whether it was prescribed or medically necessary, and knowing that
11 fraudulent insurance claims would be submitted using patients'
12 personal information.

13    C.    As a result of the fraudulent claims, checks were mailed
14 to Atlas and to UPS employees as payment on the fraudulent claims,
15 and at defendant's instruction, the UPS employees endorsed checks
16 (or remitted payments) to Atlas, defendant, and Hernandez
17 Consulting, and defendant in turn transferred the payments that he
18 received to Atlas and CC-1.

19    D.    CC-1 transferred more than $544,000 into accounts that
20 defendant maintained in his own name and in the name of Hernandez
21 Consulting, both as payment to defendant for his recruiting services
22 and for defendant to make cash payments to other UPS employees who
23 went to Atlas for sleep study testing and who brought or referred
24 others.

25 VICTIM IMPACT

26    In total defendant's participation in the above described
27 scheme resulted in the submission of more than $4.1 million in

28

2

Agreed and initialed: Co a

1  fraudulent claims to the UPS plan, and payment of approximately

2  $860,514.86 on those fraudulent claims.

3  EXECUTION OF THE SCHEME TO DEFRAUD

4       On or about the date set forth below, within the Central

5  District of California, and elsewhere, defendant executed and

6  attempted to execute the fraudulent scheme described above,

7  knowingly, willfully, and with the intent to defraud, by causing to

8  be submitted the following false and fraudulent claim for sleep

9  study testing purportedly provided to the individual identified

10 below:

| COUNT | DATE CLAIM SUBMITTED | CLAIM NUMBER | CLAIMED DATE OF SERVICE | AMOUNT OF CLAIM | PATIENT |
|-------|---------------------|--------------|-------------------------|-----------------|---------|
| EIGHT | 1/27/2015 | 15031259463 | 1/24/2015 | $10,500 | A.P. |

*       *       *

17                      CERTIFICATION OF DEFENDANT

18       I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA

19 AGREEMENT ("statement of facts") in its entirety.  I have had enough

20 time to review and consider this statement of facts, and I have

21 carefully and thoroughly discussed every part of it with my

22 attorney.  I agree that this statement of facts is accurate and

23 correct, and is sufficient to support pleas of guilty to the charges

24 described in the plea agreement and to establish the Sentencing

25 Guidelines factors set forth in paragraph 12 of the plea agreement.

27  _____          10·26·18
    EDDIE HERNANDEZ                     Date
28  Defendant

3

Agreed and initialed: CO

1                  CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am EDDIE HERNANDEZ's attorney.  I have carefully and

3 thoroughly discussed every part of this statement of facts with my

4 client and agree that it is sufficient to support pleas of guilty to

5 the charges described in the plea agreement and to establish the

6 Sentencing Guidelines factors set forth in paragraph 12 of the plea

7 agreement.

8                                     10/25/18
   CHRISTY O'CONNOR                           Date

9    Deputy Federal Public Defender
   Attorney for Defendant

10    EDDIE HERNANDEZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   4

Agreed and initialed: CO